IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNYSLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | MAGISTRATE ACTION |
| v. | : | |
| | : | NO. 14-84 |
| CHRISTOPHER J. GOLDSTEIN, | : | |
| Defendant. | : | |
| UNITED STATES OF AMERICA | : | |
| | : | MAGISTRATE ACTION |
| v. | : | |
| | : | NO. 14-85 |
| DONALD L. DEZARN, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**RUFE, J.**                                                                                          **AUGUST 19, 2014**

Before the Court are the appeals of Defendants Donald Dezarn and Christopher Goldstein from judgments entered by Magistrate Judge Jacob P. Hart. For the reasons that follow the convictions and sentences will be affirmed.

**I.      Facts and Procedural History**

On January 27, 2014, Defendants were convicted of possessing a controlled substance on land administered by the National Park Service, in violation of 36 C.F.R. § 2.35(b)(2). On March 26, 2014, they were sentenced to two years of probation, a $35.00 special assessment, and a $3,000 fine. Dezarn appeals his conviction and sentence, while Goldstein appeals only his sentence.[1] These cases were consolidated for appeal.

Dezarn and Goldstein are outspoken critics of American drug laws and policy. On August 31, 2013, they attended a rally at Independence National Historic Park in Philadelphia. The rally

---

[1] Goldstein's Notice of Appeal states that he appeals the "judgment and sentence," but his brief on appeal makes no argument with respect to his conviction. No. 14-mj-84, ECF No. 15. Therefore any objection to his conviction has been waived. *Borman v. Raymark Indus., Inc.*, 960 F.2d 327, 329 n.5 (3d Cir. 1992).

was organized to support legalization of marijuana. At approximately 4:20 P.M., a Park Ranger, Eli Bowers, smelled burning marijuana and saw Dezarn smoking a hand-rolled cigarette. Bowers escorted Dezarn to a secure area where he could perform a "field test" on the cigarette to determine if there was probable cause that the cigarette contained marijuana. Dezarn told Bowers that the cigarette contained marijuana, and the cigarette tested positive for THC (the active ingredient in marijuana). Bowers issued a citation to Dezarn.

At the same time, another Park Ranger, Giancarlo Graziani, saw Goldstein smoking what appeared to be a marijuana cigarette. Graziani asked if it was marijuana, and Goldstein said that it was. Graziani then performed a field test on the cigarette, which also tested positive for THC.

On cross-examination, Bowers testified that the field test does not conclusively establish whether a substance is marijuana; instead, law enforcement officials use the test to determine whether there is probable cause to believe a substance is marijuana. Crime laboratories can perform authoritative tests. In this case, the cigarettes seized from Dezarn and Goldstein were submitted to the Philadelphia Police Department's Chemical Analysis facility for testing. According to a memorandum introduced into evidence at trial, Dezarn and Goldstein's joints were placed into the same evidence bag as three other joints seized from someone else, for a total of five joints.[2] The laboratory tested three joints, all of which contained marijuana, and Dezarn argues that it is impossible to know whether all three of those joints were seized from someone other than Dezarn. Furthermore, Dezarn testified at trial that someone at the rally gave him the cigarette that was seized from him and that he did not know whether it was marijuana because he was unable to inhale smoke from the cigarette (although he did light it). He testified that he was

---

[2] Ex. 1-A to Dezarn's App. Br., No. 14-mj-85 ECF No. 24-1.

"not able to tell . . . with 100 percent certainty"[3] that the ambient smell of marijuana at the rally was coming from his burning cigarette, and that he did not recall telling Bowers that the cigarette contained marijuana.

## II.   Jurisdiction and Scope of Review

Judge Hart had jurisdiction pursuant to 18 U.S.C. § 3401(a), and this Court therefore has jurisdiction over the appeal pursuant to 18 U.S.C. § 3402. This Court sits as an appellate tribunal in reviewing the decision of the Magistrate Judge and therefore applies the same standards of review that the Third Circuit applies to appeals from district courts in criminal cases.[4]

## III.   Sufficiency of the Evidence

### A.   Standard of Review

"[The Court] exercise[s] plenary review over [Dezarn's] sufficiency challenge. To that end, [the Court must] examine the totality of the evidence, both direct and circumstantial, and must credit all available inferences in favor of the government. [The Court] must affirm the conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Dezarn's] burden is extremely high."[5]

### B.   Discussion

Dezarn argues, primarily on the basis of the memorandum that suggests his joint may not have been tested, that there was insufficient evidence below to find him guilty beyond a reasonable doubt. This argument lacks merit. Even if the Court accepts Dezarn's argument that his cigarette was mixed with four others (and thus there is only a 60% chance that Dezarn's

---

[3] *United States v. Goldstein et al.*, No. 14-mj-84, Hr'g Tr. 37:9–10, Doc. No. 9 (Jan. 27, 2014).

[4] *United States v. Marcavage*, No. 08-mj-0511, 2009 WL 2170094, *2 (E.D. Pa. July 16, 2009), *rev'd on other grounds*, *United States v. Marcavage*, 609 F.3d 264 (3d Cir. 2010).

[5] *United States v. Orgovan*, 377 F. App'x 227, 229–30 (3d Cir. 2010) (internal quotation marks and citations omitted).

cigarette was tested by the Philadelphia Police Department's laboratory), there is considerable additional evidence that supports the verdict and none that cuts against it.

Dezarn told Bowers his cigarette had marijuana in it. Nor did Dezarn deny making this statement; he only testified that he did not remember whether he made it.[6] The Magistrate Judge was entitled to find Bowers credible and to discount Dezarn's testimony on this point. Also, Dezarn's cigarette tested positive for marijuana at the field test. Although the field test alone may not be sufficient to prove that the substance was marijuana beyond a reasonable doubt, it certainly supports the Government's position. The circumstantial evidence in the also case points to Dezarn's guilt: he was speaking at a pro-marijuana rally; there was—as Dezarn testified—a strong smell of marijuana in the air; and Dezarn had a hand-rolled cigarette, which is a common vehicle to deliver marijuana to smokers. The field test and Dezarn's confession, taken together, are sufficient to sustain the Government's burden here; the circumstantial evidence ices the cake.

## IV. The Sentences

Both Dezarn and Goldstein argue that the sentencing court abused its discretion in imposing a sentence of a fine of $3,000 and two years' probation with the condition that they not enter Independence National Historical Park in connection with any gathering with a purpose of advocating or committing a criminal act and that they not commit a crime or advocate that others commit the offenses of possessing a controlled substance, disorderly conduct, or interfering with or resisting police officers. Although Defendants' briefing is replete with references to the First Amendment, neither Defendant directly challenges his sentence as unconstitutional; rather, they both argue that the sentences are excessive in light of the relevant sentencing factors.

### A. Standard of Review

---

[6] *United States v. Goldstein et al.*, No. 14-mj-84, Hr'g Tr. 37:12, Doc. No. 9 (Jan. 27, 2014).

Appellate courts' "review of a criminal sentence . . . proceeds in two stages. First, [they] review for procedural error at any sentencing step, including, for example, failing to make a correct computation of the Guidelines range at step one, failing to rely on appropriate bases for departure at step two, or failing to give meaningful consideration to the § 3553(a) factors at step three. If there is no procedural error, the second stage of our review is for substantive unreasonableness, and [courts] will affirm the sentence unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the [lower] court provided."[7]

Courts review conditions that are included within a sentence of probation for abuse of discretion. "A condition is within the court's discretion if two criteria are met. First, the condition must be reasonably related to the factors set forth in 18 U.S.C. § 3553(a)(1) & (2)(B)–(D). Accordingly, in imposing conditions of [probation], the sentencing court may consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the condition to deter future criminal conduct, protect the public, and provide the defendant with necessary training, medical care, or other correctional treatment . . . . Second, a condition must involve no greater deprivation of liberty than is reasonably necessary to achieve the deterrence, public protection and/or correctional treatment for which it is imposed."[8]

None of the parties has cited cases that discuss factually similar situations and the sentences that other courts have deemed appropriate, and the Court's own research revealed

---

[7] *United States v. Fumo*, 655 F.3d 288, 308 (3d Cir. 2011) (citations and internal quotation marks omitted).

[8] *United States v. Smith*, 445 F.3d 713, 717-18 (3d Cir. 2006); *see also United States v. Evans*, 155 F.3d 245, 250-51 (3d Cir. 1998) ("[W]e believe there is no difference between probation and supervised release because conditions of probation are now statutorily restricted in the same manner as conditions of supervised release.").

5

none. Therefore, the sentencing court's discretion is guided largely by 18 U.S.C. § 3553 which, as relevant here, directs the sentencing court to:

> impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.[9]

### B. Appellants' Sentences

Dezarn and Goldstein do not challenge the procedural reasonableness of their sentences, and this Court perceives no plain error on the part of the Magistrate Judge. The Sentencing Guidelines do not apply to these offenses.[10] A review of Judge Hart's Findings and Opinion reveals that he appropriately considered the sentencing factors in 18 U.S.C. § 3553 and viewed his sentence as appropriate considering Defendants' recidivism and their continued incitement of others to violate drug laws. The maximum sentence for Defendants' crimes was six months' imprisonment, five years' probation, and a fine not to exceed $5,000.[11] The sentences here were dramatically lighter than the maximum available sentences as they involved no imprisonment, two years' probation, and a fine of $3,000.

Substantively, Appellants bear the heavy burden of convincing this Court that "no reasonable sentencing court would have imposed the same sentence on [Defendants] for the

---

[9] This section also applies in imposing conditions on probation and in subjecting a defendant to a fine. 18 U.S.C. §§ 3562 & 3572.

[10] United States Sentencing Guidelines 1B1.9.

[11] 36 C.F.R. 1.3(a), 18 U.S.C. §§ 3559(a)(7), 3561(c)(2), & 3571(b)(6).

reasons the [lower] court provided."[12] The sentencing court here declined to impose a sentence of imprisonment. The fine and probation were imposed for several reasons. Both Defendants are recidivists who had previously been sentenced for the same offense to pay fines of $175. Judge Hart found that "[b]oth defendants have access to considerable financial resources. Both have the financial ability to pay the fine imposed."[13] In sentencing the Defendants, Judge Hart considered that after the judgment but before sentencing, Dezarn filmed himself again smoking marijuana on federal property and lied to a probation officer about it, while Goldstein publicly encouraged "others to repeat his offense."[14] The Defendants expressed no remorse, and the sentencing court found that the sentences were necessary to "promote respect for the law, deter these defendants and others from unlawful conduct, protect the community of federal property users and the general community from the defendants, and afford the probation officers sufficient time and authority to provide needed educational and other correctional assistance."[15] Against these considerations, Judge Hart carefully weighed Defendants' desire to continue to advocate for different national drug laws and policies and therefore narrowly tailored the conditions added to their probation that relate to advocacy to prohibit them only from (1) entering within 100 feet of Independence National Historic Park in connection with a gathering with the purpose of advocating or committing a criminal act or (2) advocating that others commit the offenses of illegally possessing controlled substances, disorderly conduct, or interfering with or resisting

---

[12] *Fumo*, 655 F.3d at 308.

[13] No. 14-mj-85, ECF No. 11 at ¶ 5.

[14] *Id.* at ¶ 2.

[15] *Id.* at ¶ 7.

police officers.[16] In his findings and opinion, Judge Hart specifically emphasized, "The defendants may, of course, continue to advocate lawfully for the reform of marijuana laws."[17]

Defendants do not meaningfully challenge any of Judge Hart's factual findings. Dezarn does make one wan argument, apparently in connection with Judge Hart's finding that he was able to pay a fine, namely that "[t]he $3,000 fine . . . was greatly excessive. Mr. Dezarn is the sole supporter of his disabled wife, and his monthly cash flow is negative. Thus, the sentence imposed Mr. Dezarn [sic] is excessive."[18] Dezarn does not dispute that he has the ability to pay the fine, and his net worth confirms Judge Hart's finding on this point.[19]

Both Defendants argue that the true purpose behind their sentences was Judge Hart's desire to punish them for expressing their opinions related to drug policy rather than to sanction their criminal behavior. Both advert to our nation's proud tradition of civil disobedience and the right to protest. Goldstein argues that:

> probation to date has shown him to be law abiding and in compliance. In reality Mr. Goldstein is not a person who needs probation supervision, and indeed the window of probation supervision that has emerged to date, has shown probation to be counterproductive inasmuch as Mr. Goldstein has repeatedly been required to notify the Court that probation seeks to chill his expressive rights which was explicitly not to be part of his sentence.[20]

Goldstein further argues that the conditions added to his probation sentence are greater than necessary to achieve the legitimate goals of sentencing.

Considering both Defendants' intransigence, specifically Dezarn's willingness to break the law between judgment and sentencing and Goldstein's advocacy that others break the law, as

---

[16] No. 14-mj-85, ECF No. 10; No. 14-mj-84, ECF No. 13.

[17] No. 14-mj-85, ECF No. 11 at ¶ 8.

[18] Dezarn App. Br. at 9, No. 14-mj-85, ECF No. 24 (citations omitted).

[19] *United States v. Dezarn*, Presentence Investigation Report at ¶ 36.

[20] Goldstein App. Br. at 5., No. 14-mj-84, ECF No. 28.

well as the fact that a lighter sentence of a fine of $175 had failed to deter either Defendant before, this Court cannot conclude that Judge Hart's sentence was unreasonable or based on impermissible considerations. The Defendants are recidivist criminals whom lighter sentences have failed to deter. Judge Hart was entitled to conclude that a stiffer penalty than a simple fine was warranted here. And Goldstein's argument that he has complied with the terms of his probation only underscores why probation was appropriate here: notwithstanding his lack of remorse and his advocacy that others break the law, his sentence of probation has stopped him from breaking the law where a previous sentence of a fine had failed. And this so-far successful sentence is lighter than the sentence of incarceration that Goldstein could have faced and that would have likely deterred him or incapacitated him from violating drug laws as well.

Moreover, the Government rightly argues that Goldstein points to absolutely no record evidence that probation has sought to chill his expressive rights and that these accusations are beyond the scope of this appeal. In his complaints about how his probation has been carried out, Goldstein challenges the manner in which the United States Probation Office has executed his sentence of probation, not the terms of his sentence. Such a challenge is not properly brought on a direct appeal of a sentence, and again, there is no record evidence to support his allegations.

It does not follow from the fact that Dezarn and Goldstein advocate for reform of the laws they violated that they were sentenced because of that advocacy. They point to no convincing reason to believe that Judge Hart sentenced them in consideration of their opinions and their desire to engage in expressive activity. Judge Hart and this Court are well aware of the vital role that vocal disagreement with and peaceful disregard of unjust laws can play in reforming those laws. But the courts' role is to administer the laws as set forth in the applicable

statutes, regulations, and precedent. Those legal texts all require affirmance of the sentences as they were neither procedurally nor substantively unreasonable.

### V. Conclusion

"America is a protest nation."[21] A sourcebook illustrating the foundations of intellectual movements that flourished through protest gathers "inspiring speeches by Eugene Debs, Huey Long, Malcolm X, and Harvey Milk; protest literature written by Upton Sinclair, Charlotte Perkins Gilman, Allen Ginsberg, and Rachel Carson; intellectual masterpieces by Herbert Marcuse, Martin Luther King, Jr., Noam Chomsky, and Audre Lorde."[22] Whether history will place Dezarn and Goldstein in this pantheon is not for the federal courts to decide. (Dezarn has already claimed for himself a seat at the table with "Mohatma [sic] Ghandi [sic] [and] Martin Luther King[, Jr.]"[23]) For the reasons stated above, Judge Hart's sentence was well within his discretion to impose. An appropriate Order follows.

---

[21] Timothy Patrick McCarthy and John McMillian, eds., *Protest Nation: Words that Inspired a Century of American Radicalism* 1 (2010).

[22] *Id.* at 2.

[23] Dezarn App. Br. at 9, No. 14-mj-85, ECF No. 24.